STATE OF FLORIDA, ex rel., Attorney General, et al., *Relators,* v. CITY OF FORT LAUDERDALE, a Municipal Corporation, *Respondent.*

136 So. 889.

En Banc.

Original Jurisdiction.

Opinion filed September 29, 1931.

Petition for rehearing denied November 2, 1931.

*Fred H. Davis,* Attorney General and *Price, Price, Kehoe & Kassewitz,* for Relators;

*Hall, Johnson & English,* for Respondent.

JOHNSON, CIRCUIT JUDGE:—The Attorney General of the State of Florida, on behalf of the State and on behalf of Hugh T. Birch, Arthur T. Galt and others, as co-relators filed in this Court an information in the nature of quo warranto, seeking to oust the City of Fort Lauderdale from exercising municipal authority over, and from taxing for municipal purposes, the lands of co-relators described in said information.

An amended information and an answer to the amended information was filed, to which demurrers were filed, respectively. The demurrers were overruled by the Court. The relators filed a motion to strike certain portions of the answer to the amended information. The said motion to strike is here denied. The cause will be disposed of on its merits.

The amended information alleges that the lands of co-relators are far removed from the improved and settled portions of said City; that they are wild and unimproved, except for the winter home and settlement of co-relator, Hugh T. Birch; that said lands have received no benefits

whatever from the city, and that no municipal benefits or improvements on or to the said lands are contemplated; that the said lands have been made less valuable by being included in the corporate limits of said city; that said lands have been assessed at excessive and exhorbitant values for the purpose of municipal taxes; that said lands are isolated from the settled portions of said city by water. The amended information goes into detail, reciting the several acts of the legislature in which the corporate limits were extended, the outstanding bonded indebtedness of the city, its population and other matters deemed to be material. The amended information then recites:

That said Chapter 10522 of June 6, 1925, and said Chapter 11484 of November 30, 1925, Laws of Florida, in so far as said acts attempt to include said lands of the co-relators herein, above described, within the corporate limits of said city, contravene those provisions of the Declaration of Rights contained in the Constitution of Florida, protecting the rights of private property by prohibiting the taking of private property without just compensation, and guaranteeing the equal protection of the laws and the right to acquire, possess and protect private property; that said acts, in so far as they attempt to include the lands of said co-relators within the corporate limits of said city, contravene the 14th Amendment of the Federal Constitution by depriving said co-relators of their property without due process of law; and that said acts, in so far as they attempt to include the lands of co-relators within the corporate limits of said city, are unreasonable, oppressive, unnecessary, arbitrary, despotic and unjust and constitute a flagrant abuse of legislative power and a flagrant invasion of personal and property rights of said co-relators.''

The answer of the respondent denies seriatim what it deems to be the material allegations of the amended information, and in support of the denials undertakes to enumerate and set out the developments and improvements made by the city.

The amended information and the answer to the amended

information each have a map or plat of the city attached and made a part of the pleading, respectively.

It appears that by Chapter 6343, Acts of 1911, the then municipal government of the town of Fort Lauderdale was abolished and a municipality to be known and designated the Town of Fort Lauderdale was created and established whose territoral boundaries included: W. 1/2 of S. W. 1/4 of Sec. 2, the S. 1/2 of Sec. 3, the E. 1/2 of the S. E. 1/4 of Sec. 4, the E. 1/2 of E. 1/2 of Sec. 9, entire Sec. 10, and the W. 1/2 of the W. 1/2 of Sec. 11, all in Tp. 50 S. R. 42 E.

The eastern limits of the town were approximately two miles from the Atlantic Ocean.

In 1917, by Chapter 7649, Acts of the Legislature, the municipality of the Town of Fort Lauderdale was abolished and a municipality to be known and designated as the City of Fort Lauderdale was created and established. The corporate limits and territory remaining the same as designated in the Act of 1911.

In 1923, by Chapter 9754, Acts of the Legislature, the corporate limits were extended in all directions, such extension going east to the Atlantic Ocean. This extension took in a small portion of the lands of co-relator, Birch.

In 1925, by Chapter 10552, Acts of the regular session of the Legislature, the corporate limits were again extended. The northern boundary extending east and west along the northern boundary of Sections 33, 34, 35 and 36 in Tp. 49 S. R. 42 E. and the northern boundary of fractional Section 31 Tp. 49 S. R. 43 E. This extension took in practically all of the lands of co-relator, Birch. Birch's lands bordering on the Atlantic Ocean.

In 1925, by Chapter 11483, Acts of the Special Session of the Legislature, the corporate limits were again extended. The northern boundary running east and west along the north boundary of Sections  25, 26, 27, 28, 29 and 30 in Tp. 49 S. R. 42 E. and the north boundary of fractional

Section 30 Tp. 49 S. R. 43 E. This extension took in the lands of co-relator, Galt.

Galt's lands are in the northeast corner of the city limits. They are in Section 25, Tp. 49 S. R. 42 E. and in Fractional Section 30 in Tp. 49 S. R. 43 E.

Birch's lands are south of the Galt lands, and are in Section 36 Tp. 49 S. R. 42 E., Fractional Section 31, Tp. 49 S. R. 43 E., Section 1 Tp. 50 S. R. 42 E. and fractional Section 31 Tp. 50 S. R. 43 E.

The City of Fort Lauderdale is located on New River in Broward County. The platted and built up portions of the city are both north and south of New River. New River enters the ocean approximately in the southeast corner of Section 12 Tp. 50 S. R. 42 E. New River Sound is a body of salt water extending north from New River Inlet and New River through Sections 12 and 1. Middle River and other small water courses enter New River Sound on the north. To get to the beach from the business section of the city you have to cross New River Sound. It appears from the pleadings that the city has constructed and maintains a substantial drawbridge over New River Sound, and a road to and over this bridge to the beach, and that this road is maintained along the ocean front to the northeast corner of the city.

It appears from the pleadings and map filed that Lauderdale Beach is a development in the northeast corner of the city extending for a mile along the beach in Section 30, Tp. 49 S. R. 43 E., and contiguous to the lands of co-relator Galt. It appears that the city maintains a water plant at Lauderdale Beach for the use and convenience of the residents.

It appears that Las Olas Del Norte is a development on the beach in Section 31, Tp. 49 S. R. 43 E. and contiguous to the lands of co-relator Birch.

It appears that Lauder del Mar, and Las Olas Beach are developments immediately south of the Birch lands.

It appears that the city has laid and maintains a twelve-inch water main across New River Sound to the beach, and north along the beach to the southern boundary of the Birch lands.

Many matters are set forth and enumerated in the amended information and in the answer to the amended information. We do not deem it necessary to set them forth here.

Section 8 of Article VIII of the Constitution of Florida provides:

> "The Legislature shall have power to establish, and to abolish, municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time."

This provision in State Constitution is without exception or limitation.

Mr. Chief Justice Brown, in the case of State of Florida ex rel. Johnson v. City of Sarasota, 92 Fla. 563, clearly expresses and defines the law on this subject:

> "Sec. 8 of Article VIII of our constitution vests the legislature with very broad powers with regard to municipalities. The power so vested 'to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time," necessarily implies the power to establish and alter the boundaries or limits of territorial jurisdiction. And even if this were not implied from such language, the legislature would have this power anyway, the same not being denied or limited elsewhere by the constitution. As was said in Robinson v. Jones, 14 Fla., P. 258: "So, in this country, the right to be a municipal corporation does not emanate from the citizen. It is a franchise which the State grants or withholds at its pleasure; nor does the existence of a municipal corporation necessarily depend upon any assent of the persons inhabiting the locality proposed to be invested with such franchises powers or duties. This is a matter of purely legislative discretion, as it is entirely within the power of this department of the government to force that capacity upon such persons by positive

legislation to that effect." And it was held in the case of State ex rel. Atty. General v. Johns et al, decided at the present term, that, "The legislature has plenary power over municipalities except as restrained by the constitution." There is no provision in our constitution which seeks to limit or regulate the exercise by the legislature of the power of prescribing municipal boundaries. Of course, such powers must be exercised in harmony with, and not in violation of, the other provisions of the constitution, such as those contained in sections one and four of the "declaration of rights" of individuals, but great latitude must be accorded to the legislative discretion in the exercise by the legislature of the practically plenary power expressly granted by Section 8 of Article VIII."

The law with reference to the legislature's power and authority over municipalities is ably defined and set forth in the cases of State of Florida ex rel. Davis v. City of Stuart, 97 Fla. 69, and State of Florida ex rel. Johnson v. City of Sarasota, 92 Fla. 563, and State of Florida ex rel. Davis v. City of Eau Gallie, 99 Fla. 579. It could serve no good purpose to again cover these questions here.

In the case of Kelly v. Pittsburg, 104 U. S. 78, 26 Law Ed. 658, the Supreme Court of the United States has this to say:

"It is not denied that the Legislature could rightfully enlarge the boundary of the City of Pittsburg so as to include the defendants land. If this power were denied, we are unable to see how such denial could be sustained. What portion of a State shall be within the limits of a city and governed by its authorities and its laws has always been considered to be a proper subject of legislation. How thickly or how sparsely the territory must be settled so organized into a city, must be one of the matters within the discretion of the legislative body. Whether its territory shall be governed for local purposes by a county, city or township organization, is one of the most usual and ordinary subjects of State legislation.

It is urged, however, with much force, that though land of this character, land which its owner has not laid off into town lots, but which he insists on using as agri-

·cultural land, through which no streets are run or used, cannot be, even by the legislature, subjected to the taxes of a city, the water tax, the gas tax, the street tax, and other of similar character. The reason for this is said to be that such taxes are for the benefit of those in a city who own property within the limits of such improvements and who use, or might use them if they chose, while the owner of this land reaps no such benefit. Cases are cited from the higher courts of Kentucky and Iowa where this principle is asserted, and where those courts have held that farm lands in a city are not subject to ordinary city taxes.

It is no part of our duty to inquire into the grounds on which those courts have decided. They are questions which arise between the citizens of those States and their own city authorities, and afford no rule for construing the Constitution of the United States.''

It is true that in the case of State ex rel. Davis et al. v. the City of Stuart an order of ouster was granted by this Court against the city. This order of ouster was based on the facts that the territory from which the City was ousted was divided from the city by a body of water approximately a mile in width; that there was no connection, roadway or bridge, connecting this territory with the city; that this territory was not served by the City of Stuart for mail, for telegraph or telephones, nor for schools; that in these matters this territory was served by another station or community. In this case a demurrer was sustained to the answer and respondent was allowed to amend. Respondent declined to amend, so the order of ouster was granted, and we think rightly so.

Our government is divided into three departments, executive, legislative and judicial. Each department is jealous of its jurisdiction, powers and duties. Each department is most generally careful not to usurp, or infringe on, any of the powers and authority belonging to another department. The three departments, and each of them, depend on the constitution for their existence. The jurisdiction, powers and duties of each department must be defined and

construed in the light of, and in their relations to, other provisions of the constitution. The people generally, and individuals, are guaranteed certain rights by the constitution. It has always been recognized as the prerogative and duty of the courts to construe the laws, including the fundamental law of the land, the Constitution.

Mr. Justice Brown, in the opinion written by him in the case of State ex rel., Davis v. City of Stuart, supra, aptly expresses it when he said:

"It thus appears to us that the contention that the power of the legislature in this particular respect is unlimited and beyond judicial review, unless there is some specific provision of the constitution expressly regulating or restraining the action of the legislature in the exercise of the particular power, is unsound. Regardless of the absence of such a specific provision, while great latitude must be allowed the legislature in such matters, yet if the boundary extension act constitutes a palpably arbitrary, unnecessary and flagrant invasion of personal and property rights clearly guaranteed by other provisions of the constitution, such action is as much subject to judicial review as any other class of legislation. . . . . .

The difficulty of judicial adjudication of such a class of cases, and the many and various factors which enter into the determination of the constitutionality of such legislation—such for instance as the difficulty of reviewing the exercise of the undoubted power of the Legislature in establishing municipal boundaries to accommodate not only the present but reasonably anticipated future needs of a growing municipality—must not deter the courts from enforcing the constitution in those cases, rare though they may be, where it is, clearly and beyond a reasonable doubt, violated and disregarded."

With reference to municipalities, and the fixing of their boundaries, who is to say where the power, authority and discretion of the legislature ends and the jurisdiction and authority of the courts begin? One may live on a farm five miles from the corporate limits of a city or town, and yet he may enjoy the benefits of paved streets every day, and

enjoy the lights, water and many other municipal facilities and conveniences.

Neither the courts nor the legislature are responsible for the provisions of the constitution. The constitution does not lodge with the courts any power or authority over municipal boundaries. The Legislature has not seen fit to delegate any of this power to the courts, except in the case of small towns of less than one hundred and fifty qualified electors. (Section 3049 Compiled General Laws of Florida, 1927.)

This case and the case of the State ex rel. Davis v. City of Stuart, supra, are not parallel. The City of Fort Lauderdale is a seacoast city. Public bathing beaches extend almost the entire length of the eastern boundary. It appears that there are developments along the entire water front, with the exception of the lands of co-relator, Hugh T. Birch, and there is a highway constructed and maintained by the municipality, extending along the beach through the Birch lands, to the northeast corner of the municipality. There is a municipal water plant at Lauderdale Beach, immediately east of the Galt lands. This territory is served from the City of Fort Lauderdale. Besides this there are elements of acquiescence on the part of the relators which operates as an estoppel. State ex rel. v. City of Eau Gallie, 99 Fla. 579, 126 So. 124.

It not appearing that there is a clear, palpable and flagrant abuse of legislative power under the constitution in this case, the prayer for ouster is denied and the information quashed.

BUFORD, C.J., AND WHITFIELD, ELLIS AND TERRELL, J.J., AND KOONCE, Circuit Judge, concur.

BROWN AND DAVIS, J.J., disqualified.