J. D. Morton et al.

*v.*

Johnson City, Tennessee, et al.

(*Knoxville,* September Term, 1959.)

Opinion filed February 5, 1960.

Rehearing denied March 11, 1960.

412

414

WALTER L. PRICE, BERNARD H. CANTOR, and KENT HERRIN, Johnson City, for appellant City.

THOMAS E. MITCHELL and JACK D. HODGES, Johnson City, JOE W. WORLEY, of WILSON, WORLEY & GAMBLE, Kingsport, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This is a suit attacking the annexation of property by the appellant City. A number of suits were filed in the law court and one in the Chancery court attacking the ordinance of the City. Pursuant to Statute (Sec. 6-310, T.C.A.) all of these suits were consolidated and tried together. The ordinance which these suits attacked was passed pursuant to Statute (Sec. 6-309, T.C.A.) authorizing the appellant City to annex territory which may be

done "upon its own initiative when it appears that the prosperity of such municipality and territory will be materially retarded and the safety and welfare of the inhabitants and property thereof endangered, * * *".

■■ Prior to the enactment of Chapter 113 of the Public Acts of 1955 (now codified as Sections 6-304, 6-308 to 6-319, inclusive, T.C.A.) the Legislature of the State possessed unlimited general power to extend the boundaries of a municipal corporation or to annex or authorize the annexation of, territory to any municipal corporation within the State. *Town of Oneida v. Pearson Hardwood Flooring Co.*, 169 Tenn. 449, 88 S.W.2d 998; *Williams v. City of Nashville*, 89 Tenn. 487, 15 S.W. 364. The present enactment (Sections 6-308 to 6-319, T.C.A.) is in addition and supplemental to the right of annexation which the Legislature possesses as indicated in this paragraph. This fact being true, that is, that the Legislature has authority to consolidate, extend or what not, "we see no reason why they may not delegate this authority, upon such terms as they may think proper, to subordinate legislative bodies, such as boards of supervisors and common councils of municipalities already created." *Skinner v. City of Phoenix*, 54 Ariz. 316, 95 P.2d 424, 426. See note to the same effect in 64 A.L.R. at page 1379.

In Kentucky the City Council may annex territory by ordinance without petition as was done here. *White v. City of Glasgow*, 148 Ky. 13, 146 S.W. 19, 20. In this case the Kentucky Court made this very pertinent statement:

"In enlarging the city boundary, and in determining the extent and manner of such annexation, the city

council acts in a governmental and legislative capacity, and its discretion is not to be controlled except as it is restrained by constitutional and statutory provisions.''

We thus hold that the Legislature had a perfect right to delegate the authority herein to the City to make annexation so long as the City complied with the statutory authority (Sections 6-308 to 6-319, T.C.A.) herein given.

■ This Act (Chapter 113, Public Acts of 1955, codified as indicated, supra) as a whole was held constitutional by this Court in the case of *Witt v. McCanless,* 200 Tenn. 360, 292 S.W.2d 392, 396. In this case we held that the action attacking annexations herein was in the nature of a quo warranto and an equitable action and that as far as the Court is concerned ''the court either finds the same to be unreasonable and vacates the ordinance, or finds the same to be not unreasonable and enters an order sustaining the validity of the ordinance'' and further that, ''there is no delegation (under this Act) to the court of the power to extend or contract municipal boundaries, *which is a legislative power,* but the court is simply given the power to determine whether the ordinance is reasonable or unreasonable with respect to health, safety and welfare of the citizens of the territory and the court is not called upon to act until an ordinance has been passed.''

After many days of studying this record, reading various and sundry authorities, those cited in the briefs and others, we have concluded that the reasons set forth by the Supreme Court of Missouri in the case of *City of St. Joseph v. Hankinson,* decided in 1958, reported in 312 S.W.2d 4, 8, concisely, logically and correctly determines how the propositions herein should be determined, in

view of the divisions of powers under our constitutional government—judicial, legislative and executive. In this case, that is, *City of St. Joseph v. Hankinson,* supra, the Court first determined the constitutionality of an annexation act there under the proposition, and the argument, that this delegates legislative authority and powers to the judiciary and permits the latter to encroach upon the legislative function in contravention of their constitution which is in effect the same as ours. The Missouri Court in concluding that the Act was not unconstitutional had before it the same questions, exactly, as we have in this case. By statute (Section 6-310, T.C.A.) the only question that we are to determine, "shall be whether the proposed annexation be or be not unreasonable in consideration of the health, safety and welfare of the citizens and property owners of the territory sought to be annexed and the citizens and property owners of the municipality."

In the Missouri case, in reference to this question, that court had this to say:

"* * * the court does not, in any sense, substitute its discretion or judgment as to the advisibility or propriety of the annexation for that of the legislative body of the city, and that it does not review the legislative discretion; its consideration of 'reasonableness' is confined to a determination of whether there exists a sufficient showing of reasonableness to make that question, at the least, *a fairly debatable one; if there is such, then the discretion of the legislative body is conclusive."* Citing authorities. (Emphasis ours.)

"The function of our courts, historically, has been merely to determine, in the light of these principles,

whether the exercise of the legislative powers *has been arbitrary and clearly unreasonable.* (See the cases just cited.) *Only to this extent do our courts consider the reasonableness of an annexation."* (Emphasis ours.)

And further that Court had this to say as to our powers under these annexation cases, that the part that the court plays is, "to decide whether the legislative declaration by the city is so palpably unreasonable and unnecessary as to be an arbitrary and oppressive exercise of its legislative power." With this reasoning of the Missouri Court we wholeheartedly agree and hold that this is the reasoning that should apply and which we adopt as applying in these annexation cases. The same principles exactly are gathered from *White v. City of Glasgow,* supra, and what we quoted from this Kentucky case. After studying and reading annexation cases from States all over the Union we have concluded that the principles above enunciated are the ones that are applicable to the instant lawsuit under annexation by the City.

For years this Court has applied a similar and related reasoning to acts of the Legislature. See *Cosmopolitan Life Ins. Co. v. Northington,* etc., 201 Tenn. 541, 300 S. W.2d 911, and cases therein cited. In this case we held that where the Legislature has enacted legislation on the basis of facts and things known to the Legislature that the courts will not inquire into the policy of the Legislature but will only determine whether or not there was a plausible reason for enacting such legislation, and that we will not examine a question de novo and overrule the judgment of the Legislature by substituting our judgment for it unless it clearly appears that the regulations enacted by the Legislature are beyond all reasonable

relation to the subject to which they are applied as to amount to merely arbitrary usurpation of power, or they are unmistakably and palpably in excess of legislative power, or they are arbitrary beyond possible justice and that if any state of facts can be reasonably conceived that would sustain legislation in enacting an Act, an Act will be assumed to have existed when the law is enacted, and one attacking this classification or the act must bear the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.

We see no reason of why such reasoning is not applicable to a legislative act of the City Council when it is vested with the authority and power to legislate by an act of the Legislature. The authors of 37 American Jurisprudence, Page 645, Section 28 thereof, say that the power to annex "is exclusively a legislative power", and "in the exercise of that power great latitude must necessarily be accorded to the legislative discretion, and every reasonable presumption in favor of the validity of its action must be indulged. The courts cannot call into question the wisdom or expediency of the legislative determination."

We now come to what happened in the present cases. After consolidation a jury was demanded and some ten issues submitted to this jury. A trial was had for something over a week and in the course of the trial the jury and the trial judge were taken on a trip over the territory which was proposed to be annexed by this ordinance. At the conclusion of this trial and the finding of the jury the trial judge accepted these findings as his and entered a decree accordingly holding the ordinance void. It is from this holding that an appeal has been perfected,

briefs filed and able arguments heard from the standpoint of both sides in the matter. As said above after many many days of study and reading the record and the authorities, etc., herein we have reached the legal conclusions as hereinbefore set forth which we will now attempt to apply to the situation in the present cases.

In one of the briefs for the appellees it is properly stated that:

"In the last analysis, the issues presented are: (1) Whether or not the proposed annexation was unreasonable in consideration of the health, safety and welfare of the citizens and property owners of the territory sought to be annexed and to the citizens and property owners of the municipality of Johnson City, Tennessee, (2) Whether or not a public hearing was held by the City and whether or not the residents of the territory sought to be annexed were given a hearing so they could voice their sentiments either for or against the proposed annexation, and (3) Whether or not the ordinance passed annexing this territory was passed in accordance with the provisions of the city charter of Johnson City, and the law applicable to such ordinances."

We will first dispose of Question No. 2, supra. The Statute (Section 6-309, T.C.A.) authorizing an annexation ordinance provides that the city may pass such an ordinance "after notice and public hearing, * * *". This record shows that on November 7, 1957, the Board of Commissioners passed a resolution calling for a public hearing at 7:30 p.m., November 19, 1957, at the City Hall on the proposed annexation of the territory described in said resolution. On November 19, 1957, at 7:30 a hearing

was held in the Commission chambers of the City Hall which is the room in which the Board of Commissioners hold all of its meetings, both regular and special. At said meeting a stenographic transcript was taken of the proceedings and all those heard. At the beginning of the meeting there were some two or three hundred people gathered outside, and in this hall, and the spokesman for the North Johnson City area which was being annexed requested that the meeting adjourn to a larger room which would hold all of those present. The regular room in which the Commission met had in the neighborhood of 40 seats for participants. On advise of the City Attorney the Mayor and Commission refused to go to another room but stated to the spokesman for this large group and to those in hearing that the Commission would hear everyone who wanted to be heard if it took all night to do it and that they could pass along and express their reasons one way or the other of why the ordinance and the territory should or should not be annexed. It is true that many of those present did not stay and voice their sentiments—some of them went to a larger room in the building—and did not come back. All of those, though, that wished to be heard were allowed to be heard and their statements transcribed and are in the record as a part of this lawsuit now before us.

The argument thus is on this question, and this was the second issue presented to the jury, that they did not have an opportunity to be heard within the meaning of the words of the Statute. In other words was this a "public hearing" within the meaning of the Statute?

The words "public hearing" have a variety of or varied meaning depending upon the facts and circumstances of each particular case. These words have been

variously defined and the definition in each particular case depends of course upon the subject of the hearing, the nature of the Board or the persons holding the hearing. These words and their meanings vary accordingly. The words here in the Statute of a "public hearing" were not used with respect to a proceeding in which the constitutional rights of any person might be affected. The subject before the Commission was the adoption of an ordinance annexing the territory in question. Such a hearing as is required under the political or legislative issue of this kind is a kind of a hearing that is to be accorded so that this body may make up its mind from a political standpoint in their legislative action as to whether or not it is feasible and right to annex this territory.

In *Commonwealth v. Sisson,* 189 Mass. 247, 75 N.E. 619, 1 L.R.S., N.S., 752, 109 Am. St.Rep. 630, the Massachusetts court had before it the question of whether or not the Board of Health acting in a legislative capacity gave a proper kind of hearing under a similar act which required a public hearing. That Court held that when a Board as the City Commission here did, acting in a legislative capacity, that this Board is not required to act on sworn evidence any more than the Legislature itself was, and no more bound to act only after a hearing, or to give a hearing when one is asked; its action is final as is the action of the Legislature in enacting the statute it being Legislative, the questions of fact passed on in adopting the provisions cannot be tried over in the courts. In other words the only question and the only requirement under this statute is that it be public; that the City Commission have an open public hearing so that they can hear those who are for or against the proposition and then make up

their own minds from a legislative standpoint of whether or not such an ordinance would be feasible in view of their legislative duty to the City.

■ This presents, under the facts in this case, a question of law for the Court to determine. There was no action being taken at this meeting by the Commission; there was no reason why the Commission should enter into an argument pro or con with those appearing to speak their piece on behalf of this legislation. The only question was to allow those that wished to stay and say their piece to be allowed to do so and then the Commission could make up its own legislative mind. This was not a question for the court as to the feasibility of making the annexation or not making the annexation, the size of the annexation, and things of that kind, but was only required that they be given this privilege of being heard.

Here the parties were given the privilege. There is no requirement under the Statute that the hearing should be any different from that as held. It might have been politically expedient for the Commissioners to have the meeting in a larger room and do this or that, but that is not a question for the court. The only question for the court is, whether or not it was open so that they could come and express themselves. Clearly as a matter of law this was such a meeting.

Much argument is heard herein, and made very effective indeed by counsel before us, that this was not a fair hearing because at the same time that this hearing was called for on this ordinance, hearings on two other ordinances were ordered for the same time and then at the time that the meeting was called counsel announced

that they would take up one or the other of the ordinances before they took up the hearing on the ordinance in question. This might have been political suicide as far as the Commission is concerned to have held the meeting as they did, but legally it is a public hearing under the statute and we are not interested in the political or legislative reasons of why such and such things were not done at this hearing. The voters have their time on this question and this does not concern us.

■ The trial court thus should have either not submitted this question of a public hearing to the jury or if he had done it he should not have accepted their finding thereon because this is a legal question and when in these cases tried as this, a Chancery case, the court realizes that the questions presented are either questions of law or complicated questions of mixed law and fact; that they are not suitable for a jury; it is the duty of the court to act thereon. See *Town of Alamo v. Forcum-James Co.,* 205 Tenn. 478, 327 S.W.2d 47.

"The constitutional guaranty of trial by jury (article 1, sec. 6) refers to common-law actions and not to suits of an equitable nature." *Hunt v. Hunt,* 169 Tenn. 1, 80 S.W.2d 666, 669.

■ The notice of this public hearing was duly published in the local papers. The call was for a meeting at the City Hall before the City Commission. This notice did not designate any particular room and of course the very obvious and only place that the meeting should and would be held, unless designated otherwise in the notice, is in the regular chambers of the City Commission. Thus it is that the notice was sufficient to notify the inhabitants that the meeting would be in the Commission room of

Commission, that is where the meeting was held. In our judgment it was legally sufficient.

■ Question No. 3, as quoted supra, from appellees brief is tied in to a great extent with what has just been said about Question No. 2. The day that this public hearing was called for and held was on a Tuesday night while the regular meetings of the Commission were on Thursday nights according to the Charter as amended. The argument is that then this was not properly called because not held on a regular night. Of course this public hearing or hearing as was conducted by the Commission did not have to be on their meeting night. This was merely the council in its political being calling a hearing on the feasibility of this annexation. It is just like the members could go out at any time that they wanted to and look over the territory and talk to this one or that one or the other about it, in other words it is a means of letting them make up their political minds as to the legislative feasibility of the act. This being true it is not necessary at all that the hearing or hearings should be at the regular time of the council meeting as called for by the charter or any special meetings or anything of that kind. They could have this meeting anytime that they saw fit to have these public hearings.

As we understand the record after this hearing was had then the council met on November 21, November 27, and December 5, 1957, at regular chambers and passed the annexation ordinance at its regular meetings and providing that the ordinance should become operative within 30 days pursuant to the act under which they acted.

This ordinance sought to annex some 2063 acres of land immediately north of and contiguous to the then present corporate limits of the City.

■ We now come to the main issue in the lawsuit that is whether or not this ordinance annexing this property was reasonable or unreasonable. We might say that in our judgment of the correct legal principle to apply is what is said in the outset of this opinion, that is if it is a fairly debatable question as to whether or not the ordinance is reasonable or unreasonable the courts certainly are not going to take any hand in it one way or the other. In other words if it becomes a fairly debatable question on this theory (reasonableness or unreasonableness) of the thing it is not a question to be submitted to a jury. Where there is evidence pro and con it becomes a question of law for the court in view of all of the evidence if it is a fairly debatable question as to reasonableness or unreasonableness. This being true the court should take the matter away from the jury and conclude in favor of the ordinance.

■ There are literally hundreds of pages here of testimony pro and con on this question. The bulk of these hundreds of pages of testimony is offered by the appellees against the reasonableness of this ordinance of the various and sundry parties who live in this territory who are against the ordinance. One of the strongest arguments against annexation is the fact that it is claimed that a large part of the territory sought to be annexed is agricultural. From Page 308 through Page 498 of the transcript will be found about 20 different small acreages of claimed farms running from 15 to around 200 acres of ground. Many of these people take the witness stand and testify that they are satisfied with

their sewerage, police and things of that kind and school systems, etc., and this is sufficient, as far as they are concerned in the County, and that they are against being incorporated. Of course there is always back of all these witnesses the fact that they feel that their tax rate will greatly increase if they are taken into the City and become a part of it under existing statutory conditions if they do become a part of the City.

The proof shows that even though there is this number of various size small farm tracts within this area that this land, within the area, is valued at far in excess of other like farm land out in the County which is not contiguous to and close to this City. Of course there is some of the land which the proof shows is rough and unsuitable for city purposes. Of course this is bound to be true of land anywhere. The Wisconsin Court in 1957 in the case of *Town of Brookfield v. City of Brookfield,* 1957, 274 Wis. 638, 80 N.W.2d 800, 803, considered this question of taking in agricultural land in towns. They said this:

"The mere fact that a large percentage of the tract proposed to be annexed consists of agricultural land is not of itself a basis for holding the ordinance annexing the area to be null and void."

This Court (Wisconsin court) applies, as they call it, the rule of reason and they say further that the courts "have considered the value of land as a guide in determining the reasonableness or propriety of its annexation. Some courts have held that it is proper to annex land which has a high value far in excess of its value for farming purposes only because of its prospective use for city purposes." The Court then cites 62 C.J.S. Municipal Cor-

porations sec. 46, p. 133. We have read many of these cases and agree with this statement from 80 N.W.2d at page 804 of the Brookfield case, supra. This court (Wisconsin Court) concludes, where large agricultural areas were taken in, thus:

"Upon a review the courts cannot disturb the council's determination unless it appears that it is arbitrary and capricious or is an abuse of discretion."

This reasoning is what all of the better reasoned opinions adopt. We agree to it.

The jury herein on the issue submitted to them found that this land was of a greater value than it would have been for ordinary farm purposes.

Shortly before the council here enacted the annexation ordinance in question, they had had under consideration a portion of this land for annexation when the people of this territory which is here sought to be annexed attempted to incorporate this area in a separate municipality, but this failed, for technical reasons or what not. We cite this merely for the proposition, that the mere fact that these people within this area were considering, and had gone so far as to prepare, even though defectively, to incorporate the area, was an excellent reason why the City in the instant case should include this land within their own city and not have a new city or a separate corporation right on the edge of their town.

Of course the argument is made, and made very persuasively, that this purported incorporation was a sham and was merely made as an excuse for the City to take in this property. It is also very forcefully argued by the appellees and those complaining of the ordinance that the

City was not financially in a position to render the necessary facilities to the annexed territory that are required of a city. There is proof offered pro and con on this question. Probably the main witness of those opposed to the ordinance is a former mayor and very important citizen of the community who testifies in favor of those against the ordinance on all of these things, in other words, that it (the City) is not able to do this and that; the territory is too large, and all of those various things. To the contrary we find that this ordinance was passed by the City Council unanimously after, according to the statements of various members of the Council, they had made various investigations of the matter and had made up their minds that it should be done.

Of course it is not expected, it would be entirely out of the question for us to take up each witness pro and con on the subject of the reasonableness of this annexation herein because to do so would require almost as large an opinion as the briefs herein, which run in the neighborhood of 100 pages each. Suffice it to say we have read this evidence pro and con and think that it is a fairly debatable question. It is so even that unquestionably the courts if they got into the matter would be getting into the legislative feature of it and not the judicial feature. When the evidence is thus evenly divided on the reasonableness or unreasonableness it is perfectly obvious that those opposing and those in favor of, whether it is reasonable or unreasonable, are so expressing themselves in a political or a legislative matter and not in such a matter as it constitutes evidence that should or would control a judiciary. It is for these reasons that we think for the same reason expressed on the question of the public hearing above, and the authorities there cited,

that it was the duty of the trial judge after hearing this evidence pro and con, and seeing that it was a fairly debatable issue on this thing, to withdraw these issues from the jury and to determine himself that since it was a reasonably debatable question, as to the reasonableness or unreasonableness, to determine in favor of the action of the legislative body who had passed this ordinance and to decree that the ordinance was a valid ordinance.

 Usually courts will not review questions of justice of annexation proceedings, adaptability of territory annexed, or propriety of annexing it. *Jarl Co. v. Village of Croton-On-Hudson*, 148 Misc. 150, 153, 265 N.Y.S. 271, affirmed in 262 N.Y. 551, 188 N.E. 60. Of course the reason back of such a holding is the fact that as is perfectly obvious herein that these questions are largely legislative, and so long as the legal requirements are carried out and the act is done within the constitutional provisions, then the courts are not going to, and should not, interfere in this political matter which is for the legislative branch of the government.

In Volume 2, McQuillen on Municipal Corporations, 3rd Edition, at Page 322, this statement as taken from a Louisiana case is quoted:

" 'Reasonableness' is a word of extensive and broad meaning. The question as to reasonableness of extension, it has been said, 'is at least quasi-legislative'. Unless clearly unreasonable 'courts should not be prone to disturb existing conditions.' "

The author of this work approves this statement.

In view of our judicial history in this State, our belief of the separation of the three powers, and what is said in

the outset of this opinion we must conclude that the question of whether or not this annexation was reasonable or unreasonable and for the health, safety and benefit of the citizens involved in the two areas is a debatable question so much so that it becomes a question of law for the court and the court should so determine.

There is no showing herein that the City Commission acted in an arbitrary or capricious or unlawful manner in any of their acts in enacting this ordinance. The fact is there is no complaint made against any individual member of this Commission. We of the court, in view of the obvious difference of opinion of people living in and outside of a corporation, as to whether or not a political body has acted fairly in the matter, should not disturb, that is, we as a court should not disturb the action of that body. Thus it is that we think the lower court erred in the particulars hereinabove set forth. For the reasons above stated we find that the ordinance was not unreasonable and an order will be here entered sustaining the validity of the ordinance, which will become operative immediately.

Constitutional objections to statutes of the kind here, under which this action was taken by the City fathers in that they give the courts legislative authority when their function is judicial, are obviated when the Act is administered by the courts as here outlined.

## On Petition to Rehear

We have before us a forceful, respectful and earnest petition to rehear. To all intents and purposes this petition is a reargument of what was made before this Court and in the original briefs herein. Obviously though, the

argument now made is directed to the original opinion herein and not to outside authorities, and is, therefore, made a little more forcefully and directly.

The argument is made in this petition that we by the opinion in this case have overruled *Witt v. McCanless,* 200 Tenn. 360, 292 S.W.2d 392. This argument is fallacious. As a matter of fact instead of overruling the opinion we expressly approved it in our original opinion and do so again.

The argument is also made herein that we are disagreeing in this case with the opinion of this Court as reported in *State ex rel. Southerland v. Town of Greeneville,* 201 Tenn. 133, 297 S.W.2d 68. This opinion, that is in the present case, in no way is in disagreement with the Town of Greeneville case. In the Town of Greeneville case the question presented was on demurrer to the declaration, and it in no way conflicts with what we have held herein.

We in working up this petition to rehear have again reviewed our notes that we made in working the original case. We find among these notes a citation to the case of *State ex rel. Attorney General v, City of Ft. Lauderdale,* 102 Fla. 1019, 136 So. 889. We have again read this case. The case holds in accordance with those followed in our original opinion that within constitutional limits, the territory which the legislative body may annex or authorize to be annexed is largely a matter of legislative discretion. That case also held that when the power is in the Legislature to establish and abolish municipalities necessarily it has the power to establish and change the limits of territorial jurisdiction. Section 8 of Article 11 of our Constitution vests the Legislature with very

broad powers with regard to municipalities which clearly cover what was done herein. The same reasoning applies here and was applied, or attempted to be applied, in our original opinion. We attempted to cite authority and state what the Legislature might do under facts and circumstances similar to those herein, and held that as long as the Legislature could do so that the city under authority from the Legislature might do the same thing the Legislature could. We thing that this is a sound, reasonable way to look at questions as presented herein.

It is argued here, too, that by our original opinion we have deprived the parties of the right of judicial review. This is a misconception of what we held in the opinion. We feel that after a careful reading of the opinion the parties will see that they do have a right of judicial review as provided by the statute, and there are no constitutional rights taken away from the parties under our form of government.

After very careful study of this petition we are satisfied with the original opinion herein and feel that it is the proper conclusion to reach on questions here presented. The petition to rehear is accordingly denied.