STATE OF TENNESSEE ex rel. FRANK SPOONE et al.,
Petitioners-Appellees,

*v.*

MAYOR AND ALDERMEN OF THE TOWN OF MORRISTOWN,
Defendant-Appellant.

431 S.W.2d 827

(*Knoxville,* September Term, 1967.)

Opinion filed June 7, 1968.

WILLIAM H. INMAN, Morristown, TAYLOR, INMAN, TIL-SON & LINE, Morristown, and MACK H. HALL, County Attorney, Morristown, of counsel, for appellees.

JAMES K. MILLER, City Attorney, Morristown, for appellant.

MR. JUSTICE DYER delivered the opinion of the Court.

Under Authority of T.C.A. sec. 6-309 the Town of Morristown in Hamblen County enacted Ordinance 1710 annexing an area adjacent to its corporate limits, which area consisted of three hundred eighty-one acres, wherein there are seven hundred nineteen people, two hundred fifteen residences, and nine parcels of commercial property. Under T.C.A. sec. 6-310 several property owners in the area to be annexed, including Hamblen County, filed their petition attacking the reasonableness of the Ordinance under this statute. The chancellor, without the intervention of a jury, found the ordinance to be unreasonable and issued an order vacating same. The Town of Morristown has appealed.

The first question here for decision is whether Hamblen County is a proper party to this proceeding. T.C.A. sec. 6-310 authorizes "any aggrieved owner of property lying within the territory" to question the reasonableness of the ordinance. Within this territory Hamblen County owns the roads and a school building. The question then is whether the word "owner" as used here would obviously include natural persons and corporations. We see no reason why it should not include a county when the county desires to question the reasonableness of the ordinance under this statute. The action of the chancellor in holding Hamblen County a proper party to this proceeding was not error.

■ The second question presented is in regard to school bonds issued by Hamblen County some of which are still outstanding. These bonds are paid by a special tax levy on property outside the corporate limits of the Town of Morristown, and the argument is to the effect that reducing the property subject to this levy by this annexation impairs the obligation of the contract between Hamblen County and its bondholders. This is the same issue and argument raised in the recent case of *State of Tennessee ex rel. Cope v. Mayor and Aldermen of the Town of Morristown*, 218 Tenn. 593, 404 S.W.2d 798 (1966), wherein the Court said:

This issue is one that would concern only the County or School District obligated on the bonds, and the holders of such bonds. It is not a justiciable issue in a suit of the present character; nor are the plaintiffs in error legally entitled to pose the question. 218 Tenn, at 603, 404 S.W.2d at 802.

There is a material difference between the case at bar and the *Cope* case. In the case at bar Hamblen County is a party to the proceedings, while in the *Cope* case neither Hamblen County nor any of the bondholders were parties to the proceedings. Even so, we think the statement in the *Cope* case that "it is not a justiciable issue in a suit of the present character" is determinative of this issue in the case at bar.

We think the rights of Hamblen County in regard to its liability for the repayment of these bonds is controlled by T.C.A. sec. 6-318. This Court in *Hamilton County v. City of Chattanooga*, 203 Tenn. 85, 310 S.W.2d 153 (1958), held a county is within the scope of this statute. This statute requires the Town of Morristown and Ham-

blen County to attempt to reach an agreement in regard to these school bonds as justice and reason may require under the circumstances. The statute then provides that if no such agreement be reached within sixty days from the operative date of the annexation, the matter shall be submitted to arbitration under our statute.

The case at bar was filed and tried under T.C.A. sec. 6-310, where the issue is essentially the reasonableness of the ordinance applying the criteria set out in that statute. The effect of the annexation upon the liability of Hamblen County to repay these bonds would not be an issue in the case tried under the criteria set out in T.C.A. sec. 6-310. This matter could only be an issue upon the ordinance becoming effective and then only if the parties are not able to agree.

It is apparent Hamblen County, upon this ordinance becoming effective, will lose certain property previously subject to being taxed for repayment of these bonds, but it is also true for example the ordinance would relieve Hamblen County of the responsibility for the upkeep of the streets and roads in the area. These factors and many others will have to be considered by the parties in reaching an agreement under T.C.A. sec. 6-318 and we think the Legislature had such in mind in directing the parties to attempt to reach an agreement as justice and reason may require under the circumstances. Construing all of these Code sections applicable to annexation by ordinance in pari materia we do not think it was the intent of the Legislature by such statutes that issues arising under T.C.A. sec. 6-318 were to be determined at the time of the reasonableness of the ordinance was at issue under T.C.A. sec. 6-310.

The chancellor was in error in admitting evidence as to the effect the proposed ordinance would have upon the liability of Hamblen County in regard to these school bonds.

While the chancellor did consider evidence in regard to the school bond issue, it is apparent from his memorandum he found the ordinance unreasonable and invalid under the other evidence in the record. Disregarding the evidence as to the school bonds the question here for decision is whether the chancellor was in error in finding the ordinance unreasonable under the evidence presented.

The statute, T.C.A. sec. 6-310, states the issue upon which the matter is to be determined in the following language:

> * * * the question shall be whether the proposed annexation be or be not unreasonable in consideration of the health, safety and welfare of the citizens and property owners of the territory sought to be annexed and the citizens and property owners of the municipality.

In *Morton v. Johnson City, Tennessee,* 206 Tenn. 411, 333 S.W.2d 924 (1960), this Court stated the rule of judicial review in these cases in the following language:

> '* * * [T]he court does not, in any sense, substitute its discretion or judgment as to the advisability or propriety of the annexation for that of the legislative body of the city, and that it does not review the legislative discretion; its consideration of ''reasonableness'' is confined to a determination of whether there exists a sufficient showing of reasonableness to make that question, at the least, a fairly debatable one; if

there is such, then the discretion of the legislative body is conclusive.' 206 Tenn. at 417, 333 S.W.2d at 927.

It is argued the fairly debatable rule as set out in *Morton*, in effect, destroys judicial review since all contested annexation cases will be fairly debatable. The rule does not destroy judicial review, but limits its scope to the court's determining whether the proposed annexation is so palpably unreasonable and unnecessary as to be an arbitrary and oppressive exercise of delegated legislative power. It is stated in 37 Am.Jur., Municipal Corporations, Section 28, that annexation is exclusively a legislative power and great latitude must necessarily be accorded the legislative discretion. The fairly debatable rule does no more than insure this latitude of legislative discretion.

The chancellor adhered to the fairly debatable rule. The chancellor found from the evidence the question of reasonableness of the ordinance was not a fairly debatable one and in holding void and vacating the ordinance the chancellor, in effect, found the proposed ordinance so palpably unreasonable and unnecessary as to be an arbitrary and oppressive exercise of delegated legislative power by the Town of Morristown.

The review here is de novo opening up for consideration all matters of fact and law appearing in the record, but there is a statutory presumption (T.C.A. sec. 27-304) in favor of the decree of the chancellor unless the preponderance of the evidence is otherwise. Further, the witnesses having appeared before the chancellor, then any conflict in the testimony requiring a determination of the credibility of a witness or witnesses, such determination made by the chancellor is binding upon this Court

unless from other real evidence we are required to conclude to the contrary. *Haynes v. Sanford*, 185 Tenn. 576, 206 S.W.2d 796 (1947); *Early v. Street*, 192 Tenn. 463, 241 S.W.2d 531 (1951); *Hall v. Britton*, 41 Tenn.App. 72, 292 S.W.2d 524 (1953).

This area proposed to be annexed exceeded one-fourth of a square mile and in accordance with T.C.A. sec. 6-309, the Town of Morristown adopted a plan of services which set forth by identification and time the municipal services that would be extended to the area and offered proof of the financial ability to provide same. We say this not to decide the case, but to exclude a problem since the adoption of such services is required by the statute prior to any right to annex by ordinance and such is not at issue on the reasonableness of the ordinance.

The chancellor in his memorandum stated the following:

Under the evidence, the Court finds and holds that the health, safety and welfare of the citizens and property owners of the territory sought to be annexed will not be improved or helped by annexation, neither will the citizens and property owners of the municipality be injured by absence of annexation. The evidence shows the territory sought to be annexed is in a better condition from the standpoint of health, safety, law enforcement, good street, garbage disposal, juvenile delinquency and general welfare than is Morristown.

The evidence supports the area to be annexed has adequate water supply furnished by Morristown for which an extra charge is made. There are adequate streets, garbage collection and police protection all furnished by the County. There are no outdoor toilets in the area as

each residence has a septic tank and the land is acceptable to such use. It is shown the area inside Morristown has two hundred sixty-eight outdoor toilets and six hundred eighty-seven septic tanks which is evidence to support the finding of the chancellor the area is in better condition than Morristown from the standpoint of health, as such is contributed to by the disposal of sewerage. There is a showing the area does not have as good a program on pest control as does Morristown, but there is no showing that the present pest control has in any way affected the health of the area or Morristown.

It is shown that Morristown would receive annual revenue from this area in the amount of $54,915.00 and annual expenses will be $34,908.50, of which $3,173.50 is for debt service on already existing debt on the Town of Morristown. Counsel for the area residents argue this is the real reason for the annexation; that is, to show a profit for the Town of Morristown. Counsel for Morristown argue these figures do not take into account future capital expenditures which will be substantial. Considering the argument with or without capital expenditures, it is apparent that the Town of Morristown will receive a net increase in revenue. We do not think this factor per se would control on the issue here unless it is shown the sole reason for the annexation is to secure additional revenue, and in such case it would be palpably unreasonable. In the case at bar it is not shown the sole reason of the annexation is to secure additional revenue and this factor per se is not controlling, but will have to be considered along with the various other factors.

Mr. R. V. Ricker is the City Administrator of the Town of Morristown, having as his duties the general supervision and operation of the town. As Administrator Mr.

Ricker had an intimate knowledge of the Town of Morristown and the area to be annexed. We think Mr. Ricker may have reached the crux of the matter when as a witness he testified as follows:

Q. Now, Mr. Ricker, will you please tell the Chancellor why this territory, why the prosperity of this territory will be materially retarded if it is not annexed to the town of Morristown?

A. I don't believe this answer will be a short answer. It will take some thought as I go along. In this area we have, in a growing town such as Morristown, in the influx of population into Morristown, there is a spread of houses into the urban area around the city. If in the development of these areas outside the corporate boundaries as it occurs and if there is not some type of planned development in this area and planned services for this area other than what exists now under the law through county government and state government, we feel that it would not be a good development and it would jeopardize the growth of the city, that the city would have to come back in and rework some areas that were not planned and were not controlled as developed and in the long run costing more money. We think that it would affect the adjacent land within the city that is controlled and is developed. There is certain sanitation regulations that are not under control outside, that have no limitations so far as what they affect.

THE COURT: In this particular area, Mr. Ricker?

A. Well, I am not talking about specifics, no, sir.

THE COURT: I think that this question is specific. Will this area be retarded if it is not annexed? Also,

will the city be retarded if this annexation doesn't take place?

A. Of course, this is an area without sewers, and we are in an area that requires sewers with the kind of percolation in the land we have. We have an area there that does not have fire protection, and it is adjacent to areas of the city. The growth of this area, the development of this area as it occurs in the future and this is part of it, Your Honor, as the area develops it *can* develop into an area more densed and more mixed that it is now. I think in annexation we have to think of the future. (Emphasis supplied.)

Mr. Ricker in his first answer copied above gives what we would consider the normal and reasonable reasons why the area adjacent to a municipality should be annexed. It is apparent from the court's question he is not referring to the particular area here at issue. As to the area in issue, Mr. Ricker testified it can in the future develop into a so densely populated area requiring annexation for the reasons given in his first answer, but this is different from saying that the area in issue is developing or has developed into such an area. In light of this record where it is shown the present situation is not hazardous to the health, safety or welfare of either the residents of the area or the residents of Morristown, then the chancellor could have reasonably inferred from Mr. Ricker's testimony the future he speaks of when the area will be so densely populated to require annexation is not yet here and, in fact, may not arrive.

 Upon review of all of the evidence and with the presumption we are required to give to the decree of the chancellor, we do not find the evidence preponderates

against the finding of the chancellor that the ordinance was so palpably unreasonable and unnecessary as to be an arbitrary and oppressive exercise of delegated legislative power. The judgment is affirmed.

BURNETT, CHIEF JUSTICE, and CHATTIN, CRESON and HUMPHREYS, JUSTICES, concur.