STATE of Tennessee ex rel. Robert J. HICKS et al., Appellee,

v.

CITY OF CHATTANOOGA, Tennessee, et al., Appellant.

STATE of Tennessee ex rel. Otis O'DELL et al., Appellee,

v.

CITY OF CHATTANOOGA, Tennessee, et al., Appellant.

Supreme Court of Tennessee.

July 29, 1974.

Rehearing Denied Aug. 31, 1974.

Eugene N. Collins, Randall L. Nelson, Chattanooga, for appellant.

Thomas H. O'Neal, Chattanooga, for appellee.

## OPINION

W. M. LEECH, Special Justice.

In 1971, the City of Chattanooga initiated by ordinances the annexation of several adjacent areas of the City, and upon final passage of the ordinances, actions were brought in the Courts of Hamilton County "in the nature of quo warranto" by residents of the various areas. Four of said suits were brought in the Circuit Court of Hamilton County, and in the various suits they are referred by areas as follows: Case Number N–16198, "Tiftonia"; Case Number N–16199, "Wauhatchie"; Case Number N–16202, "North Mountain Creek"; and Case Number N–16209 as "East Brainerd". For the purpose of a hearing these four cases were consolidated, and were heard by Honorable Sam E. Boaz, as Special Judge by designation of the Chief Justice of the Tennessee Supreme Court. Oral proof on the questions raised was heard from March 19, 1973 through March 28, 1973. In a memorandum opinion, the Court vacated the ordinances annexing the areas known as "Tiftonia" and "Wauhatchie", and the City appealed. The trial judge sustained the ordinance annexing the areas of "North Mountain Creek" and "East Brainerd" and the plaintiffs have appealed. In this opinion only the action of the trial judge in vacating the ordinances applying to "Tiftonia" and "Wauhatchie" is involved, and the City has filed in each case identical assignments of error as follows:

"I. The lower court erred as a matter of law in holding that the plaintiffs (relators) had only to show by a preponderance of the proof that the proposed annexation was unreasonable.

"II. The lower court erred in substituting its opinion of reasonableness for that of the Board of Commissioners, the legislative body of the City of Chattanooga.

"III. The lower court erred by failing to sustain the annexation ordinance, the appellants having introduced enough evidence to preponderate against the judgment below and to make, at the very least, a reasonably debatable question as to the reasonableness of the annexation."

The trial judge in his memorandum summarized the testimony as follows:

"In general, as to the four areas to be annexed, it was shown by the plaintiffs that the county was able to provide health services, a planning commission, police protection through its Sheriff's Department, pollution control, a landfill operation, county roads and county schools, that water and electricity were available, that septic tanks were reasonably efficient, that private garbage collection and fire protection were available, that some recreational facilities were available, and that the health safety and

welfare of the citizens of these areas was not endangered and that the prosperity of the residents of the affected areas and the municipality would not be materially retarded if the annexation were not permitted. The plaintiff's proof was that the city had failed adequately to provide the services mentioned within the present city and that it would not be financially able to provide the services to the annexed areas; that, consequently it would be unfair to raise their taxes for services not received. It was, therefore, their position that annexation of these four areas was unreasonable under all the circumstances.

"On the other hand, it was shown by the city that the areas in question had no fire protection comparable to what the city could offer (and ultimately a lowering of insurance rates), that the city could provide better police protection, and that the schools would have available more funds, with a smaller teacher-pupil ratio, that the health of these areas was endangered due to percolation problems with regard to septic tanks and that the county had never provided sanitary sewers, whereas the city could, that the county does not provide refuse and garbage collection, not recreational facilities, nor street lighting, nor traffic engineering, nor certain inspection services, which services could and would be provided by the city. Further, that the vast majority of the people in the proposed areas work in the city, that their economic opportunities were provided by the city, that recreational facilities were provided and could be better provided by the city, that the airport was provided by the city, that cultural advantages were provided by the city and utilized by county residents and that it was necessary and right that the tax burden for all such services be equitably distributed. It was shown that the city was financially able to and would provide the usual municipal services in accordance with the schedule of services, or before the dates scheduled."

Here we should observe in this opinion that we will consider only the action of the trial judge holding these ordinances invalid because "[T]he welfare of the residents and property owners of Tiftonia and Wauhatchie, as well as the City of Chattanooga, *would not, in the Court's opinion*, be adversely affected if the annexation of the two areas was not consumated". (Emphasis added.)

Immediately preceding the summary of the evidence, the trial judge made the following observation:

"Historically, municipalities have found it necessary to expand their city boundaries, and that is why the Legislature has adopted statutes setting out the procedure to be followed.

"The growth pattern of the City of Chattanooga, as in many other cities in the past few decades, reflects a move by many people to the suburbs. Thus, proof shows that Hamilton County in 1950, had a population of 208,255 and in 1970, the population was 255.007. The City of Chattanooga had a population in 1950, of 131,041 and yet in 1970, its population had decreased to 119,923. Certain segments of the population, referred to as the middle class, move out of the city and the city loses their support and their participation in the tax structure. Therefore, without going into great detail, it clearly appears that the City of Chattanooga has found it necessary to expand its boundaries. *The determination of this question, as provided by the State Legislature, is a legislative function of the city. The question before the Court is as to its reasonableness."* (Emphasis added.)

In all of these annexation cases now before this Court, including a companion case appealed from the Chancery Court of Hamilton County, the procedure followed by the City prior to passage of the final ordinances was the same. In each case the plans of services were based upon a comprehensive study of all areas surrounding

and adjacent to the City of Chattanooga. In the companion case from the Chancery Court of Hamilton County, styled State of Tennessee, Ex Rel. Lucius P. Hodson, et al., we have today released an opinion wherein the procedure followed by the City prior to the final passage of the ordinances was discussed and held to be in compliance with the statutory provisions. All constitutional questions which could be raised were presented in that case and found to be without merit. Thus in these cases, we have before us only one question which will dispose of all of the assignments of error. Did the trial judge apply the proper rule of law in passing upon the facts as he found them to be from all of the evidence?

In Morton v. Johnson City, 206 Tenn. 411, 333 S.W.2d 924 (1960), this Court cited with approval the language of the Supreme Court of Missouri in the case of City of St. Joseph v. Hankinson, 312 S.W. 2d 4, as follows:

> " * * * the court does not, in any sense, substitute its discretion or judgment as to the advisability or propriety of the annexation for that of the legislative body of the city, and that it does not review the legislative discretion; *its consideration of 'reasonableness' is confined to a determination of whether there exists a sufficient showing of reasonableness to make that question, at the least, a fairly debatable one*; if there is such, then the discretion of the legislative body is conclusive. Citing authorities." (Emphasis added.)

Since *Morton,* that rule has been uniformly and consistently followed by the Courts of Tennessee. In the recent case of State ex rel. Wood et al. v. City of Memphis, (Released for publication on June 3, 1974.) 510 S.W.2d 889 (Tenn. 1974), we quoted from State ex rel. v. City of Columbia, 208 Tenn. 59, 343 S.W. 2d 888 (1961) as follows:

> "In the outset it might not be amiss to say that annexation by city ordinance

under this statute contains no trick or gimmick. It is just the Legislature conferring the right upon the city fathers to annex under the conditions prescribed in the statute. This right of annexation, aside from the statute, would be in the Legislature, and the Legislature having the right to annex has likewise the right to confer this power upon the city fathers, and it seems to us perfectly obvious that the city fathers would know far more about the needs and necessity of annexation than would the Legislature. The reasons therefor are so obvious that it isn't necessary for us to express them. This being true, such an annexation, so long as it complies with the statute, has the same force and effect and is subject to the same attacks only as annexation would be if done by the Legislature."

In the *Memphis* case we also said:

> "It is obvious that in the annexation of territory, someone must fix the boundaries, and whether said boundaries are fixed pursuant to the annexation statute contained in T.C.A. § 6–309 or directly by the legislature, *it remains a legislative matter and will not be disturbed by this Court unless the action was arbitrary and unreasonable.* On the question of reasonableness, we realize that in every annexation case there are both advantages and disadvantages to annexation. Nevertheless, if a debatable question exists as to whether the advantages outweigh the disadvantages, then the court must rule in favor of the annexation. Stated another way, if the reasonableness of the annexation is a debatable question, then the court will uphold the validity of the annexation. (Emphasis added.)

The appellees, plaintiffs below, cite the case of State ex rel. Cope et al. v. Mayor and Board of Aldermen of the Town of Morristown, 218 Tenn. 593, 404 S.W.2d 798 (1966), and state on page seven (7) of their brief that, "the Tennessee Supreme

Court affirmed the judgment of the Chancellor who found an annexation ordinance by the Town of Morristown was not reasonable, but was an arbitrary and oppresive exercise of deligated legislative power." This is an erroneous statement. That case was an appeal from the Circuit Court of Hamblen County, upholding the annexation ordinance. A jury was empaneled in that case and at the conclusion of all of the evidence, both for and against the annexation, the judge withdrew the issues from the jury. In sustaining the lower court, this Court speaking through Mr. Justice Creson, said: "From this record it is obvious that the trial judge concluded, on the evidence, that a fairly debatable question was posed as to the reasonableness of the ordinance. Equally obvious is the fact that Judge Todd was applying the rationale of the opinion of this Court in Morton v. Johnson City, (1960) 206 Tenn. 411, 333 S.W.2d 924. In our view the trial court properly applied the rule announced in that opinion."

■■■■ The summary of the evidence as hereinafore copied from the trial judge's memorandum, shows that the question before the legislative body, exercising the power delegated to it by statute, raised a fairly debatable question. In other words, the City's legislative body did not act arbitrarily and in excess of its legislative powers by annexing the territories herein involved. Moreover, where the preponderance of the evidence lies is not the test in annexation cases, but rather the test is whether a fairly debatable question as to the reasonableness of the annexation exists. In view of our holding herein, it necessarily follows that the Chancellor's decree is reversed as to the areas of "Tiftonia" and "Wauhatchie" and these cases are remanded back to the trial court for disposition consistent with this opinion.

DYER, C. J., and CHATTIN, McCANLESS and FONES, JJ., concur.

## OPINION ON PETITION TO REHEAR

W. M. LEECH, Special Justice.

In this cause petitioners have filed an earnest petition to rehear and cite and rely upon the case of State ex rel. Spoone v. Mayor and Board of Aldermen of the Town of Morristown, 222 Tenn. 21, 431 S. W.2d 827 (1968). In our original opinion we were fully aware of the holding in the Spoone case and since that case only reasserted the "fairly debatable" rule pronounced in Morton v. Johnson City, 206 Tenn. 411, 333 S.W.2d 924 (1960) we deemed it unnecessary to discuss that case.

In the Spoone case the lower court found "that the ordinance was so palpably unreasonable and unnecessary as to be an arbitrary and oppressive exercise of delegated legislative power." (Emphasis added.) In affirming the lower court in that finding, it was pointed out that the advantages testified to by the Town's witnesses were not directed to the specific area sought to be annexed, which was not a densely populated area.

In the case subjudice conflicting evidence as to the necessity of annexation was to the specific area and was of such a nature and volume as to raise a fairly debatable question. The trial judge's finding of fact also shows this to be the case. The trial judge did not find that the legislative action of the City "was palpably unreasonable and unnecessary as to be an arbitrary and oppressive exercise of delegated legislative power."

We held in our original opinion that the trial judge did not apply to evidence the legal test prescribed by Morton, and after a careful review of the record and the authorities cited, we reaffirm that holding.

All other questions presented in the petition to rehear were fully covered in our original opinion and since several cases were involved the record was carefully read on the original hearing and we have

reviewed our original notes and authorities and again hold that the trial judge did not apply the proper rule of law in passing upon the facts as he found them. The evidence introduced as to these two areas presented a fairly debatable question and was therefore a legislative matter.

The petition to rehear is denied.

DYER, C. J., and CHATTIN, McCANLESS and FONES, JJ., concur.