COMMITTEE TO OPPOSE THE ANNEX-
ATION OF TOPSIDE AND LOUIS-
VILLE ROAD, et al., Plaintiffs/Appel-
lants,

v.

The CITY OF ALCOA and the Blount
County Election Commission,
Defendants/Appellees.

Supreme Court of Tennessee,
at Knoxville.

July 5, 1994.

David L. Buuck, Claiborne, Davis, Buuck
and Hurley, Knoxville, for appellants.

David R. Duggan, Nicholson, Garner and
Duggan, Maryville, for appellees.

## OPINION

O'BRIEN, Justice.

In response to petitions filed by persons alleged to be resident property owners living outside the City of Alcoa requesting that their property be annexed and incorporated into the City, Alcoa passed a resolution requesting the Blount County Election Commission to hold a referendum election on the issue of annexation of a certain adjacent area, pursuant to the provisions of T.C.A. §§ 6–51–104 and 6–51–105. In due course an election on the question was held by the Blount County Election Commission. The vote, by five (5) persons whose votes were counted, was in favor of the annexation.

Shortly thereafter, the plaintiffs in this case filed a complaint opposing the annexation alleging in pertinent part that the area subject to annexation extended along the right-of-way of Louisville Road, Topside Road and New Topside Road for approximately seven and one-half miles of roadway, measuring linearly, and by area, 54 acres. It was alleged that the annexation boundaries were gerrymandered at two (2) households along said rights-of-way, to include the households of two (2) Alcoa city employees. All other households along the rights-of-way, including property owners who actually owned the right-of-way of Topside Road, were excluded from the proposed annexed area. Approximately 34 persons, owning the property in fee simple on which the roadbed of Topside Road lies, were denied the right to vote in the election which was held on the issue of the annexation of their property into the City of Alcoa. Had those persons been allowed to vote, the outcome of the election on the annexation would have been different and the results would have been totally opposite.

The complaint further alleged that the resolution calling for the referendum was defective. There was noncompliance with the Tennessee Election Statute (T.C.A. § 2–3–204). The election officials at the polls denied the property owners, as set out in the petition, the right to vote. There was noncompliance with the posting "requirement of T.C.A. § 6–15–105." Plaintiffs requested the Court to void the election.

Defendants responded by filing a motion for summary judgment alleging that none of the plaintiffs resided within the area to be annexed under the referendum.

The chancellor overruled the motion for summary judgment. Pursuant to Tennessee Rule of Appellate Procedure No. 9 he granted an interlocutory appeal to prevent needless expense and protracted litigation, based on the arguments and stipulations of counsel for the parties that the determination of the residency of the parties entitled to vote was dispositive on all issues involved. He further found there was a need to develop a uniform body of law because the ruling of the Court was contrary to an opinion of the Attorney General. The Court of Appeals granted the Rule 9 application.

The Court of Appeals in analyzing the situation on the basis of the statutory construction which requires the court to ascertain and give effect to the legislative intent came to the conclusion that the legislative intent was demonstrated in this case by the fact that, in annexation by ordinance, "any aggrieved owner of property which *borders or lies within territory* which is the subject of an annexation ordinance" may file a *quo warranto* action to contest the ordinance as set forth in T.C.A. § 6–51–103. In annexation by referendum, the General Assembly provided for an election for "approval or disapproval of the qualified voters who *reside in the territory* proposed for annexation." T.C.A. § 6–51–105(a). They concluded that one who merely owns property within the area sought to be annexed does not "reside in the territory proposed for annexation" and was not entitled to vote in a referendum. The plaintiffs below appealed that decision to this Court.

The issue here for decision is if a majority of the residents along the right-of-way, which is the real object of the annexation, have been subjected to disfranchisement by denying them the right to vote in the election for approval or disapproval of the proposed annexation. We hold that they have and that the annexation referendum was improperly conducted.

The comment of the Court of Appeals on the scantiness of the record is a major understatement. Since the case went off on summary judgment in the trial court there is little record to examine. The complaint is accompanied by a drawing of the proposed annexed area which is of little value. There is no name reference indicated for the roads upon which the right-of-ways are to be annexed. There is no beginning point or ending point indicated to enable one unfamiliar with the area to determine if the area to be annexed adjoins the existing boundaries of the City of Alcoa unless we are to assume that as a beginning point the southwesterly right-of-way of Louisville Road can be considered as territory adjoining the city's existing boundaries so as to comply with T.C.A. § 6–51–104. What is apparent is that the beginning point, as stated in the annexation resolution, starts at the intersection of the southeasterly right-of-way of the CSX Railroad and the southwesterly right-of-way of Louisville Road and proceeds from that point over the right-of-way of a network of roads for seven and one-half miles which cumulatively contain 54 acres. It would appear from the diagram accompanying the complaint that this plan of annexation creates a vast island of unannexed territory within the boundaries annexed. The only deviation from the route of this strip annexation is to take in the residences of the two (2) resident property owners who, according to the resolution calling for a referendum, requested that their property be annexed in and incorporated into the City of Alcoa. Persons within the Mentor community, and the other area which would be surrounded by the City of Alcoa on one side and strips on the other three sides would be isolated in an island within the City, but not a part of the City.

In *State ex rel Collier v. City of Pigeon Forge,* 599 S.W.2d 545 (Tenn.1980), the City of Pigeon Forge annexed an area in accordance with T.C.A. § 6–51–102, the ordinance statute. As related in the opinion the area annexed was approximately one (1) mile long, situated astride Highway 441, plus 200 feet on each side of the highway. It was adjacent to the northern city limits of Pigeon Forge and adjoined its existing boundaries and included principally commercial property on each side. This Court observed in that case:

We should emphasize that this is not, as appellant's insist, merely a "strip" or "shoestring" or "corridor" annexation, although it is long and lean. Such annexations, so long as they take in people, private property, or commercial activities and rest on some reasonable and rational basis, are not *per se* to be condemned. We do not deal with an annexation wherein a city attempts to run its corporate limits down the right-of-way of an established road without taking in a single citizen or a single piece of private property. Such an annexation is perhaps questionable and is not here involved. As in any annexation, and more particularly one wherein a geometrically irregular parcel of land is annexed, the Court must scrutinize the stated and ostensible purpose of the annexation.

■ It is clear from the record that the procedures followed by the City of Alcoa and the county election commission for the referendum of approval or disapproval of the qualified voters residing in the territory proposed for annexation did not meet the requirements of either T.C.A. § 6–51–105 or the election laws of the State.

Chapter 51 of Title 6 of the Tennessee code prescribes the procedures for changing municipal boundaries. Title 2 of the Code governs the method by which elections will be conducted including referendums for annexations held in accordance with T.C.A. § 6–51–104, and § 6–51–105.

■ In that regard we note at the outset that the City of Alcoa resolution requesting the referendum for the proposed annexation contains in its first paragraph a reference to petitions by "two (2) resident property owners" requesting that their property be annexed by the city. It appears from the diagrams in the record that these property owners were residents along the right-of-way of the roadways described in the proposed annexation resolution, as were the other residents there who's ballots were rejected. The simple device of encircling the two (2) dwelling houses within the annexation boundaries gave them no greater authenticity as resi-

dents than already claimed for them in the pre-annexation resolution.

A "qualified voter" is defined as a citizen of the United States 18 years of age or older who has been a resident of this State for a period of at least 20 days prior to offering himself for registration. (T.C.A. § 2–2–102). A person shall be registered as a voter of the precinct in which he is a resident. (T.C.A. § 2–2–107). All elections shall be held in polling places designated by the county election commissions. Each polling place shall be in the precinct it is to serve. (T.C.A. § 2–3–101). Elections on questions submitted to the people are provided for in T.C.A. § 2–3–204. A person offering to vote may only be challenged on grounds set forth in T.C.A. § 2–7–124. If the judges determine unanimously that the person is not entitled to vote, he shall vote by paper ballot and his ballot shall be deposited in a sealed envelope marked "Rejected" with his name, the reason for rejection, and the signatures of the judges written on it. T.C.A. § 2–7–125.

■ Under the statutes governing elections in this State a legal election could not be conducted which excluded the residents whose property abutted the right-of-way proposed for annexation on one side and included the property owners on the opposite side. The right to vote is fixed by the precinct in which they reside and not which side of the road they may live. The Court of Appeals recognized that some of the aggrieved property owners have their dwelling houses upon parcels of land lying partially within the area to be annexed and that the determination of a persons residence under our election code is provided in T.C.A. § 2–2–122(a)(1) as follows:

The residence of a person is that place in which his habitation is fixed, and to which, whenever he is absent, he has a definite intention to return.

That Court then concluded that one whose dwelling house does not lie within the area proposed to be annexed does not reside therein and, therefore, is not entitled to vote in a referendum conducted in accordance with T.C.A. § 6–51–105(a). The Attorney General, in his opinion, relied upon by defendants, expressed generally the same view, saying that where a portion of a person's property is included within the proposed area of annexation but the structure of the residence of that person is not included within the proposed area of annexation, such person does not "reside in the territory proposed for annexation." [1]

We conclude that the opinions of the Court of Appeals and the Attorney General circumscribe the definition of residency too narrowly. T.C.A. § 6–51–105 refers to qualified voters who reside in the territory proposed for annexation, and not to the location of the dwelling house of those who reside there.

■ Although commonly discussed in Fourth Amendment terms, curtilage is defined in 25 C.J.S., as having a well defined legal meaning in the administration of both civil and criminal law. In terms of use "curtilage" is defined as a space necessary and convenient and habitually used for the family purposes and the carrying on of domestic employments; the space of ground adjoining the dwelling house, used in connection therewith in the conduct of family affairs and for carrying on domestic purposes; the ground adjacent to a dwelling house and used in connection therewith; the yard, or the garden, or field which is near to, and used in connection with, the dwelling. *See Welch v. State,* 289 S.W. 510, 511, 154 Tenn. 60 (1926). This Court, in *State v. Prier,* 725 S.W.2d 667, 670 (Tenn.1987), discussed the common law definition of curtilage as "the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" Black's Law Dictionary, Fifth Edition, 1979, p. 346, includes a more comprehensive definition. "A piece of ground commonly used with the dwelling house. A small piece of land, not necessarily enclosed, around the dwelling house, and generally includes the buildings used for domestic purposes in the conduct of family affairs. A courtyard or the space of ground adjoining the dwelling house necessary and convenient and habitually used for family purposes and the carrying on of domestic employments. A

1. OAG 92–31.

piece of ground within the common enclosure belonging to a dwelling house, and enjoyed with it, for its more convenient occupation." We are of the opinion that under the provisions of T.C.A. § 6–51–105 residency includes the curtilage of the qualified voters who reside in the territory proposed for annexation. In this instance, those residents along the rights-of-way whose curtilage extended into the territory proposed for annexation were entitled to vote in the referendum.

The record does not indicate the total number of qualified voters who attempted to vote in the referendum or the reasons for their rejection. The case must be remanded to the trial court to make this determination and whether or not the referendum was conducted in accordance with the applicable election laws and this opinion.

The judgment of the Court of Appeals is reversed and the case is remanded for further proceedings in accordance with this opinion. The costs on appeal are assessed against the defendants.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

DAUGHTREY, J., not participating.