IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 5, 2001 Session

## FRANKLIN COUNTY, TENNESSEE v. THE TOWN OF MONTEAGLE, TENNESSEE, ET AL.

Appeal from the Chancery Court for Grundy County
No. 4940    Jeffrey F. Stewart, Chancellor

No. M2000-02453-COA-R3-CV - Filed May 23, 2001

This is an annexation by referendum case.  Monteagle is located in Grundy County.  Its corporate limits extend to Franklin County.  Interested residents of the area sought to be annexed in Franklin County petitioned Monteagle to be annexed.  Monteagle adopted a Resolution for the referendum. Nineteen out of twenty eligible voters favored annexation.  Franklin County filed a complaint for injunctive relief, which was granted upon a finding that the Resolution was not properly published. Monteagle appealed, but in the interim, adopted another Resolution for a referendum.  The voters again favored annexation.  The County challenged the second referendum by a Rule 52 motion alleging that Monteagle repealed the Resolution for the second referendum thus making it a nullity.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and D. MICHAEL SWINEY, JJ., joined.

William C. Killian, Jasper, Tennessee, and David B. Hamilton, Knoxville, Tennessee, for the appellant, The Town of Monteagle, Tennessee and Michael Yarworth, Judith Gunn, Maxine Kemmerly, Thomas Moore, Sr., and Glenn King, in their official capacities as Members of the Grundy County Election Commission.

Ben P. Lynch, Winchester, Tennessee, and Carrol D. Kilgore, Nashville, Tennessee, for the appellee, Franklin County, Tennessee.

### OPINION

### The Complaint

This is an action to enjoin (1) the Town of Monteagle, situated in Grundy and Marion Counties, from annexing an area in Franklin County, and (2) the Grundy County Election Commission from conducting a referendum in Franklin County.

The plaintiff alleged that Monteagle had previously sought to annex an area in Franklin County owned by a corporation, Raoul Land and Development Company, and that its efforts were unsuccessful because the area was undeveloped land with no residents and for this reason its annexation over the objection of the County was forbidden by Tenn. Code Ann. § 6-58-108(d). The judgment was unappealed and is *res judicata* as to the Raoul tract, according to the allegations of the complaint.[1]

The complaint alleges that five days after the entry of the Raoul judgment on July 27, 1999, Monteagle adopted a Resolution claiming the power to annex by referendum pursuant to Tenn. Code Ann. § 6-51-104 which authorizes the annexation of "territory adjoining its existing boundaries."

It is further alleged that the territory sought to be annexed consists of the Raoul tract, which adjoins Monteagle's existing boundaries, plus numerous other selected parcels in Franklin County, none of which adjoin the existing boundaries of Monteagle, and some of which are unimproved and uninhabited.

The plaintiff, by its governing body, objected to the proposed annexation by resolution. The referendum was scheduled to be held on October 26, 1999 at the City Hall in Monteagle.

The plaintiff alleged that the proposed Resolution was void because (1) of inadequate notice; (2) it was a subterfuge to evade the judgment in the previous case, No. L1855 ; (3) the Raoul tract cannot be annexed without the approval of Franklin County; (4) none of the other tracts adjoin the boundaries of Monteagle and thus are not subject to annexation under Tenn. Code Ann. § 6-51-104 *et seq.* and the residents of five of the tracts who signed the petition are not interested parties within the meaning of the Statutes; (5) the area proposed to be annexed was gerrymandered by the exclusion of tracts of residents who oppose annexation.

The plaintiff further alleged that the proposed annexation is prohibited by Tenn. Code Ann. § 6-58-108(c) in that the Raoul tract constitutes a "corridor" since it is the only means by which the other 26 tracts are connected with Monteagle's boundaries.

It is further alleged that the proposed referendum is void because (1) it is required, as provided by Tenn. Code Ann. § 6-51-104 *et seq.*, to be held in the county wherein the land lies; (2) appropriate statutory notice was not given; (3) the authority to conduct the referendum is reposed in Franklin County, not Grundy County; (4) the annexation Resolution did not call for an election "among residents of Monteagle."

On February 8, 2000, the plaintiff filed a supplemental complaint alleging that on January 24, 2000 the court held that the annexation referendum of October 26, 1999 was illegal, but that no judgment had yet been entered.

---

[1] The final judgment in the case at Bar does not reference the previous case. Its significance is *de minimis*. For this reason we do not further notice it.

It further alleged that Monteagle planned to hold another referendum on April 11, 2000, a pointless exercise which should be enjoined.

Monteagle opposed the allowance of the supplemental complaint, essentially insisting that the actions of Monteagle are not related to the case at Bar but should be alleged in a new cause of action.

## The Answer

Monteagle admitted the entry of the Raoul Tract judgment as alleged. It agreed that the Resolution was adopted as alleged. It alleged that the "location of the said statutory election was determined by the written requirements of the Tennessee Secretary of State . . ."[2]

The answer further alleged that Franklin County was an improper venue and that the case should be transferred to Grundy County. It also alleged that the complaint fails to state a claim because no constitutional infirmity is asserted as required by *Vicars v. City of Kingsport*, 659 S.W.2d 367 (Ct. App. 1983), and by Tenn. Code Ann. § 6-51-104.

The answer denies the standing of the plaintiff to bring this action, and that Tenn. Code Ann. § 6-5-103(a)(1)B, (a)2(A) and (B) are unconstitutional and thus the plaintiff has no authority to bring this action or contest the annexation. All other allegations were denied.

## The Judgment

On October 25, 1999, the Chancellor temporarily enjoined the members of the Grundy County Election Commission from certifying the results of the annexation election scheduled for October 26, 1999. The case was heard on its merits on November 22, 1999. The Chancellor made these Findings of Fact and Conclusions of Law, coupled with an Order:[3]

FINDINGS OF FACT

1. The resolution calling for annexation by referendum was adopted at a regular meeting of the Defendant city's governing body held July 27, 1999, and there was prior publication of notices thereof sufficiently in advance of the meeting, being

---

[2] The "written requirements" was a letter to the Grundy County Elections Commission stating "under Tenn. Code Ann. § 6-53-101, if municipal boundaries fall in more than one county, then the county that houses the City Hall shall call and conduct the elections. Consequently, just as you conduct the elections for the officers of the City of Mount Eagle (sic) Grundy County will also conduct the referendum on the question of annexation if one is called."

[3] The parties acknowledge the obfuscatory nature of the record. Proof was presented in open court, by telephone, and in large part by affidavits. Motions abound, sometimes filed after a bench ruling, announcement, or pronouncement, and before written orders were entered. There were inordinate delays in the submission and entry of orders, a sequential progression of which is difficult to construct.

-3-

postings of three public notices within the town, as has been done for the past 20 years, publication of a notice in the Cumberland Chronicle, a local monthly newsletter type publication, and publication of two notices, in a newspaper of general circulation, The Grundy County Herald, which made reference to actions scheduled to be taken at the said July 1999 public meeting, one of which notices gave the time and place of the meeting. Such gave adequate public notice of the meeting, as required by T.C.A. § 8-44-105, particularly in view of the nature of the defendant town as a small but growing town located in a mountainous area.

2. The area proposed to be annexed by the said resolution included public roads, which are the property of the Plaintiff Franklin County, Tennessee.

3. On or about September 2, 1999, the Defendant town posted copies of its said annexation resolution in three public places located within its bounds, and upon trees or utility poles situated along public roads within the area proposed to be annexed in Franklin County; although such resolutions could not be read from the roads, they were visible, people were aware of the action that had been taken, and in fact did see and read such posted copies. There being no public meeting places within the area sought to be annexed, such constituted adequate public posting within the requirements of T.C.A. § 6-51-104(b).

4. The defendant town published copies of its said resolution on September 2, 1999 in the Grundy County Herald, a newspaper of general circulation in Grundy County, the county in which Defendant Town's city hall is located, and also in the Winchester Herald Chronicle, a newspaper of general circulation within the area proposed to be annexed. However, such copies of its resolution in each such publication was within a notice of a referendum therein stated to be scheduled for October 12, 1999, but the said publication was in form that purported to have published by the Grundy County Election Commission.

4a Plaintiff, in open Court, having withdrawn its objection to the receipt in evidence of the exhibits tendered by Defendant City, and having thereby joined in the request that such exhibits be admitted in evidence, IT IS ORDERED that the said advertisements published by said Defendant on September 2, 1999, be admitted in evidence, that published in the Winchester Herald-Chronicle as Exhibit 6 and that published in the Grundy County Herald as Exhibit 7, and it is further ORDERED that the content of the said publications does not require any modification of Finding No. 4 above, in that such exhibits in form purport to have been published by the Grundy County Election Commission.

5. While the Grundy County Election Commission later published a notice of the annexation referendum, which it scheduled for a later date, October 26, 1999, there was no publication of the resolution by the Defendant Town itself under its own

name (Exhibits 6 and 7 each purporting, on its face, to be a notice by the Grundy County Election Commission of a public election stated to be scheduled for October 12, 1999), which publication by defendant Monteagle was a precurser (sic) to publication by the Election Commission.

6.      As to Plaintiff's application for injunctive relief against defendant Monteagle completing the resolution-adoption and resolution-publication functions for an April, 2000, annexation referendum as to the same territory described in its original annexation resolution of July 17, 1999, the Court finds, on the basis of a full evidentiary record hereinbefore submitted by the parties, that although some tracts are unpopulated, the entire territory so described is populated and has residents therein qualified to vote.

CONCLUSIONS OF LAW

1.      Franklin County, as the owner of the public road rights-of-way within the area sought to be annexed, has standing to bring this action under *State ex rel. Spoone v. Morristown*, 222 Tenn. 21, 431 S.W.2d 827 (1968).

2.      This action was not commenced under the statutory provisions for contesting the reasonableness of municipal annexation by quo warranto, and the reasonableness of the proposed annexation is not an issue herein.

3.      Elections and certifications relating thereto may be enjoined only upon the grounds that there are constitutional infirmities either in the resolution calling for an election or in the election process, *State ex rel. Vickers v. Kingsport*, 659 S.W.2d (Tenn. App., E.S. 1983, App. den. 1983), and the failure of the Defendant Town to make its own publication of the resolution, instead of mis-identifying it as a publication by the Election Commission, as a statutory precursor to empowering the Election Commission to conduct an election, renders the election void and enjoinable.

4.      Inasmuch as the entire area proposed for annexation has residents, the prohibition against annexation without consent of the Franklin County Commission, in the Comprehensive Growth Plan Act, T.C.A. § 6-58-108(d), is inapplicable in this situation, and Defendant Monteagle is authorized to propose annexation by referendum of the said area under the rationale of *Smith v. City of Church Hill*, 828 S.W.2d 385 (Tenn. App., E. S., 1991) and *State ex rel Vickers v. Kingsport, supra.*

5.      The Court concludes that the proper situs of the election is Grundy County under T.C.A. § 6-53-101, which provides that the situs of the election is the county in which a town's city hall is located (Monteagle being a multi-county municipality),

which is Grundy County, and such statute determines the situs both of elections of candidates and elections on questions.

6.    The Court having originally pretermitted ruling upon all objections based upon the alleged remoteness of the populated sector of the area proposed for annexation from the city limits of the Town of Monteagle, and upon assertions that the proposed annexation is "corridor annexation," as issues which would not affect the validity of the election itself, the Court concludes that Plaintiff's Motion to file a Supplemental Complaint should be and is GRANTED, but Plaintiff's application for preliminary injunctive relief is DENIED for reasons herein set out.

7.    The Court further concludes that Plaintiff's motion to amend the original Complaint should be, and hereby is GRANTED, substituting for Exhibit G to the original complaint (mistakenly attached, being a duplicate of Exhibit H thereto), the exhibit tendered with the said motion, being identical to Exhibits 6 and 7, hereinbefore ordered filed, except that the tendered exhibit was published on September 2, 1999, in the Sewanee Mountain Messenger.

### ORDER

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the individual Defendants, constituting the Grundy County Election Commission, are enjoined from certifying the results of the annexation referendum as proposed by Resolution of the Defendant Monteagle, which it held on October 26, 1999, and that, inasmuch as the foregoing Findings of Fact, Conclusions of Law, and Orders, constitute final decisions on the merits as to all claims and defenses submitted by all parties,

IT IS FURTHER ORDERED that this order by entered as the Court's Final Judgment herein, and that all costs be assessed against the Defendant against whom execution may issue if necessary.

### Post-Judgment Proceedings

The plaintiff filed a Rule 52.02 motion that the Chancellor make additional findings and alter or amend the judgment, alleging that:

1.    Monteagle rescinded the Resolution it adopted on February 7, 2000 calling for another referendum scheduled for April 11, 2000.

2.    On April 10, 2000 Monteagle filed a petition in this [trial] court to enjoin the Grundy County Election Commission from certifying the results of the planned April 11 referendum, the same being docket No. 4992. The restraining order was issued,

-6-

but Monteagle, on April 28, 2000, dismissed its petition. Thereafter the Grundy County Election Commission "certified that the majority of residents voted in favor of annexation."

3. There was no valid referendum on April 11, 2000.

Monteagle filed a Rule 59 motion to alter or amend alleging that the court erred in holding that the first Resolution was not properly published.

The plaintiff filed a supplemental complaint alleging that Monteagle planned another referendum, in effect, to cure the publication defect in the first Resolution.

All post-judgment filings were denied.

## The Issues

As propounded by the County:

1st: Whether Monteagle (situated in Grundy and Marion Counties), whose city boundary was coincident with the Marion-Franklin County line, was authorized by T.C.A. § 6-51-104 to use referendum annexation to annex lands lying wholly within Franklin County, when (a) Franklin County objected thereto, (b) the only land within the area described for annexation which was populated, or had qualified voters, was not "adjoining to" the Town's boundaries, but was separated from those bounds by a comparatively vast area of privately-owned, unpopulated, and unimproved tracts, (c) the Court had rendered unappealed final judgment, in prior litigation between the parties, that Monteagle could not annex such unpopulated tracts except by the consent of Franklin County, and (d) when the sole enacted description of the area sought to be annexed consisted of a list of separately-owned individual tracts, by tax map and parcel numbers (with an attached copy of part of a tax map), instead of one single tract described by metes and bounds or geographical features.

2nd: Where a referendum annexation resolution adopted by Monteagle (whose municipal elections are held in Grundy County) sought to annex tracts, all located within Franklin County, and T.C.A. § 6-51-105 required the issues to be determined by the votes of ". . . voters voting thereon *in the territory to be annexed, . . ."* whether the required situs of the election and body empowered to conduct the same were Franklin County and the Franklin County Election Commission and the Grundy County Election Commission lacked jurisdiction to conduct it.

3rd: Whether the Court should have granted Plaintiff's motion to alter or amend the judgment, and reconsidered the first and second issues where Monteagle, before the second annexation election, repealed its annexation Resolution and obtained a restraining order against the election commission conducting the second election, as invalidating the second referendum as a matter of law.

As propounded by Monteagle:

I. Whether the trial court erred by granting an injunction enjoining the election commission from certifying the annexation referendum election results due to a constitutional infirmity.

II. Whether the trial court erred and should have dismissed the claim because Franklin County failed to demonstrate standing to contest a voluntary annexation referendum vote.

III. Whether the trial court erred by failing to dismiss the issue for mootness because Franklin County failed to complain when the Town of Monteagle conducted a second referendum annexation election.

IV. Whether the trial court properly determined that the City Hall of Monteagle was the place to hold the referendum annexation election in a multi-county municipality.

## Review

Appellate review is *de novo* on the record with a presumption of correctness of findings of fact unless the preponderance of the evidence is otherwise. Rule 13(d) T. R. A. P.; *Tennessee Farmers Mutual Insurance Co. v. Moore*, 958 S.W.2d 759 (Tenn. Co. App. 1997).[4] There is no presumption of correctness as to questions of law. See *Nelson v. Wal-mart Stores, Inc.*, S.W.3d 625, 628 (Tenn. 1999).

## Analysis

_____

[4] A careful reading of the judgment reveals that the purported failure of Monteagle "to make its own publication of the resolution" was the sole basis of the judgment invalidating the first referendum.

A careful reading of the complaint reveals that the purported failure of Monteagle "to make its own publication of the resolution," or comparable language, is not alleged.

As nearly as may be deduced, the Chancellor presumed a precise allegation was made, as did the parties, and the case was tried accordingly. Because no issue is directed to this anomaly, we will treat the complaint as alleging that Monteagle failed to publish the resolution.

# I.

Annexation may be by ordinance or by referendum. In the case at Bar, Monteagle chose to enlarge its corporate boundaries by referendum. Tenn. Code Ann. § 6-51-104 *et seq.* controls.

The statutory scheme provides:

**6-51-104. Resolution for annexation by referendum – Notice. –**
(a) A municipality, when petitioned by interested persons, or upon its own initiative, by resolution, may propose extension of its corporate limits by the annexation of territory adjoining to its existing boundaries.
(b) Such resolution, describing the territory proposed for annexation, shall be published by posting copies of it in at least three (3) public places in the territory proposed for annexation and in a like number of public places in the municipality proposing such annexation, and by publishing notice of such resolution at or about the same time, in a newspaper of general circulation, if there is one, in such territory and municipality. [Acts 1955, ch. 113 § 3; T.C.A., § 6-311.]

**6-51-105. Referendum on annexation. –** (a) At least thirty (30) days and not more than sixty (60) days after the last of such publications, the proposed annexation of territory shall be submitted by the county election commission in an election held on the request and at the expense of the proposing municipality, for approval or disapproval of the qualified voters who reside in the territory proposed for annexation.
(b) The legislative body of the municipality affected may also at its option submit the questions involved to a referendum of the people residing within the municipality.
(c) In the election or elections to be held, the questions submitted to the qualified voters shall be "For Annexation" and "Against Annexation."
(d) The county election commission shall promptly certify the results of the election or elections to the municipality.
(e) If a majority of all the qualified voters voting thereon in the territory proposed to be annexed, or in the event of two (2) elections as above stated, a majority of the voters voting thereon in the territory to be annexed and a majority of the voters voting thereon in the municipality approve the resolution, annexation as provided therein shall become effective thirty (30) days after the certification of the election or elections.
(f) The mode of annexation provided in this section is in addition to the mode provided in § 6-51-102. [Acts 1955, ch. 113 § 3; T.C.A., § 6-312.]

**6-58-108 Annexation and incorporation prior to approval of growth plan. –**
(a)(1) After May 19, 1998 but before the approval of the growth plan by the local government planning advisory committee, a municipality may annex territory by ordinance as provided by § 6-5-102 unless the county legislative body adopts a

resolution disapproving such annexation within sixty (60) days of the final passage of the annexation ordinance.

**6-58-108(d).**   Nothing in this section shall be construed to prevent a municipality from proposing extension of its corporate limits by the procedures in §§ 6-51-104 and 6-51-105.  If the territory proposed to be annexed does not have any residents, such annexation may be accomplished only with the concurrence of the county, as provided in subsection (a).

The Chancellor found that Monteagle complied with all of the foregoing statutory requirements except with respect to the publishing of the Resolution which was held to be deficient in that ". . . said publication was in form that purported to have been published by the Grundy County Election Commission" and "there was no publication of the Resolution by the defendant town itself under its own name . . . "  The Chancellor accordingly ruled that the "failure of the defendant town to make its own publication of the Resolution instead of mis-identifying it as a publication by the Election Commission . . . renders the election void and enjoinable."

The Resolution was published by Monteagle in its entirety, but it incorporated a Notice of Election which was the prerogative of the Grundy County Election Commission.  The published product read:

> In accordance with the Tennessee Code Annotated  6-51-104 and 6-51-105, the Grundy County Election Commission will hold a referendum at the City Hall in Monteagle, Tennessee, on Tuesday, October, 12, 1999 from 9:00 A.M. to 6:00 P.M. The referendum is for the purpose of voting on the annexation of an area into the Monteagle City limits as follows: [5][then followed the Resolution verbatim, the adequacy of which is not challenged].

Monteagle agrees that the quoted sentence was not a part of the Resolution, but insists that since it, and not the Election Commission, published the Resolution verbatim, the statutory requirement was satisfied because the criticized sentence, at worst, was mere surplusage and harmless and, at best, gave additional notice to the public.  The Chancellor held that the "failure of the town to make its own publication" implicated a constitutional infirmity and therefore rendered the election void, citing *State ex rel. Vicars v. City of Kingsport*, 659 S.W.2d 367 (Tenn. App. 1983).  *Vicars, supra,* holds that if the evidence establishes constitutional infirmities either in *the adoption of a resolution calling for a referendum or in the election process,* an annexation by referendum could be held invalid.  We do not believe that the inclusion of a Notice of Election by the town clerk in the publication of the Resolution rises to the level of due process or equal protection deprivations.  Neither the procedures employed in the adoption of the Resolution, nor in the election process is challenged.  Significantly, the County did not allege an equal protection or due process violation, or other constitutional

---

[5]  This 'prelude' was in upper case letters.  The Grundy County Election Commission prepared and published its own notice of election concerning which no question is raised.

infirmity. We further note that the undisputed proof reveals that *Monteagle* inserted the disputed publication, and that the Grundy County Election Commission thereafter inserted a Notice of Election as required by Tenn. Code Ann. § 2-1-101, *et seq.* There is no evidence whatever that anyone was misled by the publication. Courts should be reluctant to invalidate elections. *Forbes v. Bell*, 816 S.W.2d 716 (Tenn. 1991). Generally, substantial compliance, rather than strictly literal compliance, with election laws is required. *Lanier v. Revell*, 605 S.W.2d 821 (Tenn. 1980).

We agree with the argument of Monteagle that the manner in which the Resolution was published does not invalidate the election.

## II.

The next issue propounded by Monteagle is whether the County had standing to contest a "voluntary annexation referendum vote." It is significant to note that the County did not seek a declaratory judgment.

The Chancellor held that the County had standing to bring this action because of its ownership of public roads within the area sought to be annexed, citing *State ex rel. Spoone v. Morristown*, 431 S.W.2d 827 (1968). Monteagle challenges this holding because the statutory scheme, Tenn. Code Ann. § 6-51-104 *et seq.*, makes no provision for intervention by the County. If the "ownership" of public roads within the territory to be annexed enables a county to oppose annexation [by ordinance, as in *State ex rel. Kessel v. Ashe*, 888 S.W.2d 430 (Tenn. 1994) or] by referendum, as in the case at Bar, the overarching purpose of legislation governing municipal expansion will be undermined because of unacceptable litigation, a point evidently recognized by the Legislature when it adopted a Comprehensive Growth Plan, Tenn. Code Ann. § 6-58-101 *et seq.* and particularly Tenn. Code Ann. § 6-58-108(d), which requires the concurrence of the county, in annexation by referendum, *only when the territory sought to be annexed is uninhabited.* This statutory provision was enacted thirty years after the decision in *Spoone, supra.* We therefore disagree with the Chancellor that the County has standing to bring this action solely because of its ownership - whether in fee or easement - of the public roads in the area sought to be annexed. The territory sought to be annexed was populated, albeit sparsely, as evidenced by the fact that twenty votes were cast, nineteen of which favored annexation.

## III.

The Chancellor determined that the City Hall in Monteagle was the proper venue to hold the referendum.

It is well settled that cross-county lines' annexation in Tennessee may be authorized by statute, *Town of Mt. Carmel v. City of Kingsport*, 397 S.W.2d 379 (Tenn. 1965), and this point is not an issue in the case at Bar.

Monteagle is situated in Grundy, Marion, and Franklin Counties. Its corporate limits largely bordered Franklin County, as we have seen. The area sought to be annexed is wholly in Franklin County; 95 percent of the residents of this area voted in favor of annexation by Monteagle.

Tenn. Code Ann. § 6-51-105(a) provides:

. . .[t]he proposed annexation of territory shall be submitted by the county election commission in an election held on the request and at the expense of the proposing municipality, for approval or disapproval of the qualified voters who reside in the area proposed for annexation.

Tenn. Code Ann. § 6-53-101(a) provides:

. . . If the municipal corporation includes territory in two (2) or more counties, such election and all other municipal elections of such municipal corporation shall be called and conducted by the county election commission of the county in which the town seat or city hall is located.

The County argues that the statutory language of Tenn. Code Ann. § 6-51-105(a) requires the election to be *held* in Franklin County, with reliance on *Committee to Oppose the Annexation of Topside v. City of Alcoa*, 881 S.W.2d 269 (Tenn. 1994). A plain reading of Tenn. Code Ann. § 6-51-105(a) does not support the County's argument; it merely provides that the qualified voters who reside in the area sought to be annexed must decide the issue. Nowhere does this statute address the *location* of the polling place.

Tenn. Code Ann. § 6-53-101(a) is somewhat more helpful, but neither does it specifically address the question of where the election is to be held under the circumstances in the case at Bar. Neither does *Alcoa, supra*, or Title 2, of the Code, address the specific issue. We think a reasonable interpretation of the entire statutory scheme justifies the Chancellor's conclusion that Grundy County was the proper venue for the election in this case. *See, Wilson v. Johnson County*, 879 S.W.2d 807 (Tenn. 1994). As a practical matter, the mechanics, logistics, and dynamics which would be implicated if the referendum was required to be held in Franklin County might well be insuperable.

## IV.

Monteagle insists that the complaint of Franklin County should have been dismissed for mootness since (1) a second referendum was conducted, (2) the residents of the area sought to be annexed voted favorably to annexation, (3) no litigation ensued, and (4) annexation is now a *fait accompli.*

To recount:

The first referendum was held October 26, 1999. The complaint was filed October 4, 1999. Judgment was entered May 23, 2000, that the election was invalid because of the purported failure of Monteagle to publish the Resolution.

On February 7, 2000, Monteagle adopted another Resolution for annexation by referendum of the same territory. This referendum was held on April 11, 2000.[6]

But on April 7, 2000, Monteagle rescinded the Resolution it adopted on February 7, 2000.

On April 10, 2000 Monteagle filed a complaint, Docket 4992, against the Grundy County Elections Commission seeking a declaratory judgment, with injunctive relief, and alleging that (1) on February 7, 2000 Monteagle adopted a Resolution requesting the Election Commission to conduct a referendum in the same territory, and (2) on April 7, 2000 it adopted another Resolution rescinding and nullifying its action of February 7, 2000. It alleged that the State Election Commission "requests that an Order be obtained from this Court enjoining the release of the results of said election since early voting has begun."

A temporary restraining order was issued forbidding the defendant County Election Commission from releasing the results of the referendum. By Notice entered April 28, 2000, the complaint, Docket 4992, was voluntarily dismissed.

But a day earlier, on April 27, 2000, Monteagle rescinded its Resolution adopted on April 7, 2000 which rescinded the February 7, 2000 Resolution.

All of this legal legerdermain leads to the dispositive issue of whether the second referendum was properly authorized by a Resolution of the governing body of Monteagle. The County argues that the repeal of the April 7 Resolution did not reinstate the February 7 Resolution, because the repeal of an enactment repealing an earlier enactment does not itself revive the repealed enactment, which must be re-enacted *ab initio*, citing *Haynes v. McKenzie Memorial Hospital,* 667 S.W.2d 497, (Ct. App. 1984).

The County filed a Rule 52.02 motion that the court make additional findings, and alter or amend the judgment, reciting the aforesaid events, and seeking to have the court hold that (1) the April 11, 2000 referendum was void because the authorizing Resolution was repealed, and (2) none of the tracts in the area sought to be annexed was populated by registered voters.

Monteagle filed a Rule 59.04 motion to alter or amend the judgment, alleging that the court erred in holding that the Resolution for the earlier annexation was not properly published.

---

[6] Presumably, from an abundance of precaution.

The Chancellor denied both motions.

We agree with the argument of the County that the second annexation was an exercise in futility, since there was no Resolution by Monteagle authorizing the referendum. It was repealed. *See, Haynes, supra.* With respect to the argument of the County that none of the tracts in the area sought to be annexed was populated by registered voters, the Chancellor found that while some of the tracts were unpopulated, the entire area as described in the Resolution was populated with qualified voters. We are unable to find that the evidence preponderates against this finding. We hold that the County's Rule 52.02 motion should have been granted to the extent stated.

In summary, we find that:

1.      No constitutional infirmity was alleged or proved in connection with the first Referendum

2.      The publication of the first Resolution was in substantial compliance with the statutory requirement.

3.      The City Hall in Monteagle was the proper polling place.

4.      Proper notices were given as evidenced, ultimately, by the fact that 95 percent of all qualified voters in the area sought to be annexed, voted.

5.      The record reveals no misleading of voters, or of those qualified to vote, and no irregularities which impacted the election.

6.      The area sought to be annexed should be considered and treated in its entirety, rather than as separate tracts, or tax parcels, and the area was inhabited by qualified voters.

7.      The County had no standing to contest the annexation vote. It did not seek a declaratory judgment.

8.      Monteagle accomplished the annexation of the area by the first referendum.

9.      Monteagle repealed the Resolution for the second referendum thereby invalidating it.

10.     The judgment is reversed and the complaint is dismissed at the costs of the plaintiff.

_____
WILLIAM H. INMAN, SENIOR JUDGE